**KENTUCKY BAR ASSOCIATION,**
**Petitioner,**

v.

**Brian REEVES, Respondent.**

**No. 2001–SC–0558–KB.**

Supreme Court of Kentucky.

Dec. 20, 2001.

As Amended Jan. 2, 2002.

*OPINION AND ORDER*

## I. FACTS

Respondent, Brian Reeves, who currently resides in Florida, was admitted to the practice of law on October 1, 1976. In June 1999, the Inquiry Commission charged Respondent with four counts of professional misconduct. The Board of Governors found Respondent guilty of one count and not guilty of the remaining three counts. The Board recommended a suspension of one year. Neither Respondent nor the Kentucky Bar Association filed a notice of review, and this Court hereby adopts the Board's recommendation.

Respondent and Shari Lynn Foty were divorced in 1986. In 1987, the Warren Circuit Court entered a Dissolution Decree awarding joint custody of the four children to Respondent and Foty. In June 1988, Foty announced her intention to remarry and to move to Minnesota. The parties agreed to split custody of the children, with the provision that each parent would have a four week visitation period each year with all four of the children. In July 1988, during Respondent's four week visitation with the children, he filed in the Warren District Court an ex parte motion for an emergency order seeking custody based on the allegation that Foty's husband, Michael Foty, had sexually abused one of the daughters. The allegation stemmed from an accusation in Foty's own divorce proceeding. After lengthy hearings, the circuit court awarded custody of all four children to Respondent. Foty appealed. On March 9, 1990, the Court of

Appeals affirmed the circuit court's opinion, but noted that Respondent had manipulated the social services and legal systems to his advantage.

Following the Court of Appeals' 1990 ruling, the Warren Circuit Court limited Foty's visitation rights by an order entered in January 1992. Foty again appealed. During the pendency of this appeal, Judge Benjamin Dickinson of the Barren Circuit Court was appointed Special Judge in the case on December 6, 1993. On September 2, 1994, the Court of Appeals vacated the 1992 visitation order and remanded the matter for further hearings. The Court of Appeals once again criticized the Respondent for manipulating the proceedings.

On December 16, 1994, before the Court of Appeals opinion was final, Judge Dickinson held a hearing and entered an order which awarded visitation to Foty and which criticized Respondent. In March 1995, Judge Dickinson denied Respondent's motion to recuse. Judge Dickinson suggested that Foty file a motion for a permanent change of custody. Based on Foty's motion for permanent change of custody, Judge Dickinson scheduled a hearing on the motion for August 4, 1995.

Meanwhile, Respondent's employee, JoAnn Grinstead, was in the midst of divorce proceedings. She was sole custodian of her children's stock accounts maintained by Hilliard/Lyons at its Bowling Green office. In 1995, Grinstead became concerned because she thought that her children's accounts had been wrongfully transferred to her husband's control or had been "zeroed out." She was unable to obtain information regarding her accounts from the Hilliard/Lyons' Bowling Green office. Judge Dickinson's son, Samuel Dickinson, was the account executive for Grinstead's accounts. Grinstead attempted to contact her divorce attorney, but he was unavailable. She then contacted Judy Schwank, an attorney who works with Grinstead and Respondent. Schwank advised Grinstead to contact Respondent regarding the matter.

In late July 1995, Grinstead talked to Respondent while the two were in a Kroger parking lot. Grinstead informed Respondent about her concerns with Hilliard/Lyons and Respondent agreed to help. On July 27, 1995, Respondent drafted the following letter to Hilliard/Lyons' Louisville office and sent a courtesy copy to Samuel Dickinson:

Brian Reeves
Attorney at Law
1890 Lyda Avenue, Suite 303 ● Bowling Green, Kentucky 42104(502) 782–2611

July 27, 1995

J.J.B. Hilliard, W.L. Lyons, Inc.
Hilliard Lyons Center
P.O. Box 32760
Louisville, KY 40232–2760

Re: JoAnn Grinstead

I have been retained by JoAnn Grinstead to represent her interests in a matter involving accounts she had with Hilliard Lyons. Ms. Grinstead has advised me of the following information:

She is involved in a divorce action from her estranged husband, Chris Grinstead. (I do not represent her in the divorce case.) Chris Grinstead is a cousin of Samuel Dickinson,

the account executive who handled her account at Hilliard Lyons. At her husband's behest, Samuel Dickinson transferred from Bowling Green to other locations and into other names, a joint investment account which was in both her name and that of her husband as well as two accounts where she believes she was the sole guardian for her two children.

Samuel Dickinson was aware of the pending divorce when he assisted her estranged husband in transferring these assets to other locations and into other names. Samuel Grinstead [sic] did not seek her consent to the changes, nor inform her of them. The mailing address on the accounts were [sic] changed so that mail about them would be routed to Chris Grinstead's place of employment, thereby depriving her of access to knowledge about the changes. She believes Chris Grinstead and Samuel Dickinson conspired to conceal assets from her.

When Ms. Grinstead first learned that some transfers may have taken place, she attempted to call Samuel Dickinson, but he would not return her calls for some time. When he finally did return her calls, he was not forthcoming

J.J.B. Hilliard, W.L. Lyons, Inc.
July 27, 1995
Page Two

about his actions. A few minutes after the two hung up, Chris Grinstead called her complaining that she had called Samuel Dickinson. Apparently, even though Samuel Dickinson did not inform Ms. Grinstead when transferring money from her name without her permission, he did find it necessary to let Chris Grinstead know she had found out about the transfers.

She has talked with Hilliard Lyons representatives about this situation and was given some information about it over the telephone. She has asked that appropriate action be taken. She has not received a further response.

To this end, on behalf of Ms. Grinstead, I demand the following:

1. That you send to me all documentation of each and every account on which JoAnn Grinstead appears or appeared. This documentation should include all information about those accounts held in your files or in your computers. By way of illustration only, we demand copies of all documents signed by Ms. Grinstead when each account was opened, all trade information, all additions to, or withdrawals from each account.

2. That you send me all information you have in writing or on computer about the transfers by Samuel Dickinson of the assets in those accounts. Included should be all documentation of any sort including, but not limited to, letters, confirmations, internal or external memoranda, all notes, telephone logs or messages, and change of address documents.

3. That you inform me what actions have been taken against Samuel Dickinson as a result of the actions outlined by Ms. Grinstead above.

Once we have received and reviewed the above information, we will make decisions about what further steps might be appropriate, perhaps including seeking monetary damages against Hilliard Lyons, Samuel Dickinson, or both.

In the interim, *Ms. Grinstead insists:* (1) that appropriate sanctions be taken against Samuel Dickinson for violating his fiduciary obligations to her and (2) that procedures be instituted to make certain that Samuel Dickinson is unable to take similar actions against the financial interests of others. Your response to this interim demand may impact the nature of further actions by Ms. Grinstead.

J.J.B. Hilliard, W.L. Lyons, Inc.

July 27, 1995
Page Three

Ms. Grinstead and I would appreciate an expeditious response to the matter addressed in this letter.

Sincerely yours,
/s/
Brian Reeves

BR:st
pc: Samuel Dickinson
    JoAnn Grinstead

Brian Reeves
Attorney at Law
1890 Lyda Avenue, Suite 303 ● Bowling Green, Kentucky 42104(502) 782–2611

July 27, 2001

Samuel Dickinson
Hilliard Lyons
102 East Wayne Street
Glasgow, KY 42141

Re: JoAnn Grinstead

Dear Mr. Dickinson:

Enclosed for your records is a courtesy copy of a letter I sent today to Hilliard Lyons in Louisville on behalf of JoAnn Grinstead.

If you have any information that the events Ms. Grinstead has described to me as set forth in that letter are false, please let me know immediately. We will be looking to you to make Ms. Grinstead whole for any loss she may suffer as a result of any violation you may have made of your fiduciary obligation to her.

Sincerely yours,
/s/
Brian Reeves

BR:st
pc: JoAnn Grinstead
Enclosure

---

The location of the stock accounts was resolved quickly and Samuel Dickinson was absolved from all fault and liability. Shortly after Respondent mailed the letter, Respondent initiated, through his attorney, a second motion to recuse Judge Dickinson in Respondent's custody case. Judge Dickinson refused to recuse himself for the August 4, 1995, hearing and questioned Respondent regarding the letter sent to Hilliard/Lyons. Judge Dickinson informed Respondent that he had forwarded the letter to the county attorney's office for a possible criminal investigation of Respondent for intimidating a judicial officer. Eventually, Judge Dickinson entered an order recusing himself from Respondent's custody proceedings. The Barren County Grand Jury ultimately returned an indict-

ment against Respondent for violation of KRS 524.120 (Intimidating a Judicial Officer), and KRS 514.080 (Theft by Extortion), which was transferred to the Jefferson Circuit Court on a change of venue. The indictment was subsequently dismissed upon the agreement of Respondent to voluntarily withdraw from the practice of law in Kentucky for a period of two years. Judge Dickinson also filed a complaint against Respondent with the Kentucky Bar Association.

## II.  THE CHARGES

The Inquiry Commission charged Respondent with four counts of professional misconduct. Count I alleged a violation of SCR 3.130–4.1, which prohibits a lawyer, in the course of representing a client, from knowingly making a false statement of material fact or law to a third party. The complaint alleged that Respondent had violated this rule by purporting in his letter to Hilliard/Lyons that he was retained by JoAnn Grinstead to represent her. Both the trial commissioner and the Board of Governors found Respondent "not guilty," on the basis that Grinstead had sought the Respondent's assistance regarding the stock accounts after she had been unsuccessful in receiving help from two other attorneys. Count II alleged a violation of SCR 3.130–4.4, which prohibits a lawyer from knowingly using means that have no substantial purpose other than to embarrass, delay or burden a third person. Both the trial commissioner and the Board of Governors, by a 15 to 4 vote, found Respondent guilty of this charge and recommended a one year suspension of Respondent's law license. Count III alleged a violation of SCR 3.130–3.5, which prohibits a lawyer from seeking to influence a judge by illegal means. The KBA argued that Respondent's letter was an attempt to intimidate Judge Dickinson. Both the trial commissioner and the Board of Gover-

nors found Respondent "not guilty" of Count III, as they found that the purpose of the letter was not to intimidate Judge Dickinson, but rather to create grounds for his recusal from Respondent's custody proceedings. Count IV alleged that Respondent engaged in conduct which violated SCR 3.130–8.3, which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. The Kentucky Bar Association argued that the Respondent's letter misrepresented JoAnn Grinstead's communications with him. However, because no evidence was presented to the trial commissioner or to the Board of Governors showing that the letter contained false information, the trial commissioner and the Board of Governors found Respondent "not guilty" of Count IV.

## III.  Rule of Professional Conduct 4.4

■  Respondent was found guilty of violating Kentucky Rule of Professional Conduct 4.4, which provides:

> In representing a client, a lawyer shall not knowingly use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or knowingly use methods of obtaining evidence that violate the legal rights of others.

The trial commissioner in his "Findings of Fact and Conclusions of Law" stated:

> The Demand Letter could well be viewed as having a legitimate "substantial purpose." The Demand Letter addressed Mrs. Grinstead's concerns about the stock accounts at Hilliard/Lyons, requested punishment of wrongdoers, and informed Hilliard/Lyons that pursuit of "monetary damages against Hilliard Lyons, Samuel Dickinson, or both" was a possibility. On the other hand, the Demand Letter can easily be viewed as

having a "substantial purpose," though an illegitimate one. Only with tunnel vision can the Demand Letter be deemed, when viewed in its entirety, to have had a solely legitimate "substantial purpose." The application of common sense to the making of a finding of the "purpose" or motive of Reeves in composing and mailing the Demand Letter strongly suggests, and the Trial Commissioner finds, that Reeves' purpose and motive was to "embarrass, delay or burden a third person."

In the "Recommendation" section of the trial commissioner's findings, the trial commissioner further states:

In other words, Mr. Reeves used his signature as an attorney on the Demand Letter, not solely to accomplish legitimate ends for his client, but rather, principally, to achieve an advantage in a personal matter unrelated to the representation of his client.

Respondent's letter had a dual purpose, one legitimate and one illegitimate. We agree that Respondent's act of contacting Hilliard/Lyons was designed to try to achieve the recusal of Judge Benjamin Dickinson from his custody hearing. Another purpose was to assist his client. The main issue in this case is the means that Respondent employed in his representation of JoAnn Grinstead. Although Respondent was entitled to inquire about the stock accounts on behalf of Grinstead, the fact remains that the means that he chose to contact Hilliard/Lyons, (the letter) exceeded the bounds of legitimate representation and demands for relief. He knew or should have known it was beyond available legal relief to demand that Hilliard Lyons terminate Samuel Dickinson. Respondent's personal animus toward the Dickinson family became apparent in the last paragraph on the second page of the letter.

■ Further, the tone and hostility of the letter, as well as the personal references to Samuel Dickinson, reveal that Respondent was attempting to provoke the Dickinson family. Respondent's attempts to recuse Judge Dickinson were successful. Although Judge Dickinson at first refused to remove himself from Respondent's case, eventually Respondent successfully provoked Judge Dickinson to the point that Judge Dickinson admitted that he could not be impartial and unbiased. As a result, Respondent's custody case hearing was delayed until another judge was appointed. Such conduct by Respondent is unprofessional and should be sanctioned. No attorney should pervert a legitimate inquiry on behalf of a client by incorporating personal provocative language demanding remedies not available in the legal system and thereby using it as a means to further his own interests in his own case. Respondent's letter to Hilliard/Lyons was done to further both his interests and the interests of JoAnn Grinstead. However, his personal attack on Samuel Dickinson furthered only his own interests. Therefore, we adopt the recommendation of the Board of Governors and suspend Respondent, Brian Reeves, from the practice of law for one year.

Therefore, it is hereby ordered that:

1. Counts I, III, and IV of the charges against Respondent are dismissed.

2. Respondent is adjudged to have violated the Rules of Professional Conduct as described in Count II, and is hereby suspended from the practice of law in the Commonwealth of Kentucky for one year. The period of suspension shall commence on entry of this opinion and order and continue until such time as Respondent is reinstated to the practice of law by order of this Court pursuant to SCR 3.510 or any controlling amendment to SCR 3.510.

3. Pursuant to SCR 3.390, Respondent shall, within ten (10) days from the entry of this order, if he has not already done so, notify all clients in writing of his inability to represent them, and notify all courts in which he has matters pending of his suspension from the practice of law, and furnish copies of said letters of notice to the Director of the Kentucky Bar Association.

LAMBERT, C.J., GRAVES, JOHNSTONE, STUMBO and WINTERSHEIMER, J.J. concur.

KELLER, J., concurs in result only.

COOPER, J., not sitting.

ENTERED: December 20, 2001.

/s/ Joseph E. Lambert
Chief Justice